### BOWLES, Adm'r, Office of Price Administration, v. CUNNINGHAM et al.

### Civil Action No. 3710.

District Court, W. D. Pennsylvania.

June 19, 1945.

John A. Metz, Jr., Dist. Enforcement Atty., and Thomas F. Garrahan, Chief Fuel and Consumer Goods Unit, Office of Price Administration, both of Pittsburgh, Pa., for plaintiff.

Bernard Goodman, of Pittsburgh, Pa., for defendants.

GIBSON, District Judge.

The court, after due hearing upon complainant's prayer for a preliminary injunction, makes the following Findings of Fact and Conclusions of Law:

### Findings of Fact

1. Since July 17, 1944, Clyde E. Speer, J. H. Cunningham and L. H. Funcke, trading as The Clyde E. Speer Coal Company, a partnership, have been and are now engaged in the selling of bituminous coal in the Western District of Pennsylvania, the sales of which are and have been continuously regulated by Maximum Price Regulation 120. Clyde E. Speer is not named as a defendant herein.

2. Prior to July 17, 1944, at the times complained of by plaintiff, the business was carried on by a corporation, known as The Clyde E. Speer Coal Company, Incorporated, which is not a defendant herein.

3. From July 17, 1944, until December 2, 1944, defendants sold bituminous coal to the Veterans' Administration, United States Government, for a price of $3.40 per ton, f. o. b. Veterans' Administration, Aspinwall, Pennsylvania. The delivery price was determined in this manner: Ceiling price f. o. b. mine was $2.70 per ton and the delivery charges to Aspinwall were $0.70 per ton. Total to consumer was $3.40 per ton.

While defendants billed the Veterans' Administration $3.40 per ton, defendants paid their suppliers, F. W. Harrison and E. W. Quinette, trading as Harrison and Quinette Coal Company, only $3.28 per ton, f. o. b. Veterans' Administration, Aspinwall, Pennsylvania, thus realizing a commission of twelve cents per ton.

4. From July 17, 1944, to November 25, 1944, defendants sold bituminous coal to the Allegheny County Workhouse for a price of $3.96 per ton, f. o. b. Workhouse. The delivered price was determined in this manner: Ceiling price, f. o. b. mine, $3.06, delivery charges to Workhouse, $0.90, total to consumer $3.96.

In this case, defendants billed the Allegheny County Workhouse $3.96 per ton, and paid their suppliers, Harrison and Quinette Coal Company, only $3.81 per ton, f. o. b. Workhouse, thus realizing a commission of fifteen cents per ton.

5. From July 17, 1944, to December, 1944, defendants sold crushed bituminous coal to the City of Pittsburgh, Pa., for a price of $4 per ton, f. o. b. Ross Pumping Station. The delivered price was determined in this manner: Ceiling price, f. o . b. mine, $3.25, delivery charges to Pumping Station $0.75, total to consumer, $4.00.

Here, too, the defendants realized a commission of fifteen cents per ton by billing the City of Pittsburgh at $4 per ton delivered, and paying their suppliers, Harrison and Quinette Coal Company, only $3.85 per ton f. o. b. Ross Pumping Station.

6. The defendants did not employ the haulers of the coal nor set the delivery charges per ton. Defendants merely charged the consumers the ceiling price per ton of the coal, f. o. b. mine, plus the amount per ton set by Harrison and Quinette as the delivery charges.

7. Plaintiff has not shown conclusively that the delivery charges in the above three instances exceed the delivery charges allowed by Maximum Price Regulation 120.

8. Plaintiff has not conclusively shown that the price per ton charged by the defendants in the above three instances exceed the ceiling prices set by Maximum Price Regulation 120.

### Conclusions of Law

I. Defendants are subject to Maximum Price Regulation 120, and the prices of coal sold by them must not exceed the ceiling prices set by said Regulation.

II. Plaintiff not having conclusively shown that defendants knowingly violated Maximum Price Regulation 120, a preliminary injunction is not required.

### Discussion

This action was tried immediately following that of Bowles, Administrator, v. Harrison and Quinette, D.C., 61 F.Supp. 160. The cases are related, in that the sales alleged to have been made at over-the-ceiling prices were made by defendants to the City of Pittsburgh, Allegheny County Workhouse and the Veterans' Administration from coal supplied from the mines of Harrison and Quinette.

In the Harrison and Quinette case the overcharges claimed resulted only from the inadvertent failure of the defendants to file monthly reports while they were selling crushed coal at run of mine prices (greater than the ordinary price of screened coal). One of the overcharges alleged against the defendants in the instant action is based upon the invalidity of sales of such coal made without due report by Harrison and

164

Quinette, that sale being made to the Ross Pumping Station of the City of Pittsburgh. However, no knowledge of the failure of Harrison and Quinette to file reports was charged to defendants herein.

The instant action did not arise from complaints as to overcharge made by the vendees of the coal, but was instituted by the agents of the enforcement branch of the Administrator's Office in what they doubtless conceived to be their duty. As a matter of fact, the vendees were obviously not in sympathy with the instant action, as each of them had a great deal of trouble in obtaining sufficient coal for its needs, and had been supplied by defendants only by the exercise of considerable effort on the part of defendants.

The principal controversy concerns the amount of delivery charges defendants are permitted to add to the ceiling price per ton of coal, f. o. b. mine. The defendants were sales agents of the Harrison and Quinette Coal Company, and their ceiling prices, in theory, were dependent upon the ceiling prices allowable to Harrison and Quinette. See Regulation No. 1340.201. The main difficulty in the disposition of this action is not with the regulation, but with the proof. The only proof as to the actual cost of the transportation of the coal from the mine to the vendees was the testimony of the government witness as to admissions alleged to have been made to him by one of the Harrison and Quinette partners, and not otherwise established. By that admission the transportation cost of the coal sold to the Veterans' Administration was $0.60 per ton; that sold to the Allegheny County Workhouse was $0.75 per ton, and that sold to the City of Pittsburgh Pumping Station was $0.65 per ton. But the defendants had been billed by Harrison and Quinette for a transportation charge of $0.70 per ton on the Veterans' Administration shipment, $0.90 per ton on the Allegheny County Workhouse shipment, and $0.75 per ton on the shipment to the Pumping Station. If the defendants had no knowledge of the transportation costs other than disclosed by the billing, and no evidence exists to the contrary, then they cannot be properly charged with any intent to exceed the proper ceiling charge. This is true if it is assumed also that they were without knowledge of any invalidity of Harrison and Quinette's charges for crushed run of mine coal due to failure to make proper monthly returns as required by regulations.

Feeling that no intent to violate the regulation has been shown on the part of the defendants, it is the opinion of the court that no necessity exists for the issue of a preliminary injunction.